**Wilby Frank SUMMIT, Petitioner-Appellant,**

v.

**Frank C. BLACKBURN, Warden, Louisiana State Penitentiary, Respondent-Appellee.**

**No. 86–4129.**

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1986.

---

**3.**

Loyola Law School Clinic, Gerard A. Rault, Jr., Professor of Law, New Orleans, La., for petitioner-appellant.

Joseph Erwin Kopsa, Asst. Atty. Gen., Baton Rouge, La., Charles Brandt, J. Nathan Stansbury, Dist. Atty., Lafayette, La., for respondent-appellee.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Wilby Frank Summit was convicted in the Louisiana courts of first-degree murder, that is, an intentional homicide while engaged in the attempted perpetration of armed robbery. He was sentenced to death. After exhausting his state remedies, Summit filed a petition for a writ of habeas corpus in federal district court, alleging nearly a dozen violations of his constitutional rights. The district court denied the writ, but granted a certificate of probable cause on one of Summit's claims. The petitioner appeals the district court's denials of his other claims and seeks certificates of probable cause as to all issues.

Most of the petitioner's arguments implicate the alleged ineffectiveness of his appointed trial counsel during each phase of his trial. Although the petitioner may have demonstrated deficiencies in trial counsel's performance, we hold that, with one exception, no relief is warranted because he has failed to show that he was prejudiced by those deficiencies. On his claim that trial counsel neglected to raise the "corpus delicti" rule with respect to the attempted armed robbery, we hold both that counsel was ineffective and that Summit was prejudiced by counsel's ineffectiveness. On this ground, then, we reverse the district court, and remand for a conditional grant of the writ, conditioned on Louisiana's imposing on Summit a sentence less than death.

I

The underlying facts of the crime for which Wilby Frank Summit was convicted are as follows. The victim was stabbed three times in the men's room of a rest area on Interstate 10 just east of Lafayette, Louisiana. Summit fled the scene but was arrested within half an hour after a brief chase and search. He had blood on his hands and his knife was missing from the leather pouch on his belt. Two Lafayette policemen testified at his trial that the night of his arrest, Summit made an oral confession of having stabbed the victim while trying to rob him. One police officer reduced the confession to writing approximately thirty minutes after it was made, and the other did so forty minutes after it was made. The two written versions are identical and read as follows:

No. You and I both know what I done is wrong. We were short on cash. We were out of work and I jumped him. He fought back. I stabbed him. I ran out the front door and he went out the back. I ran and the police caught me.

Summit was indicted and tried by a jury in the 15th Judicial District Court, Lafayette, Louisiana, on the charge of first degree murder under La.Rev.Stat.Ann. § 14:30 (intentional killing during the perpetration or attempted perpetration of a felony). He was represented by court-appointed counsel. Summit took the stand at trial and testified on his own behalf. He denied stabbing or attempting to rob the victim, and denied having confessed to any crime. On July 1, 1983, he was convicted of first degree murder and, after a brief penalty hearing, was condemned to death.

Summit had new court-appointed counsel for his direct appeal. The Louisiana Supreme Court affirmed his conviction and death sentence. *State v. Summit*, 454 So.2d 1100 (La.1984). The United States Supreme Court denied certiorari, *Summit v. Louisiana*, — U.S. —, 105 S.Ct. 1411, 84 L.Ed.2d 800 (1985). Frank Summit retained *pro bono* counsel to pursue post-conviction remedies.

In April 1985, Summit filed a petition for post-conviction relief (habeas corpus) in state court. The state judge held an evidentiary hearing on the issue of ineffective assistance of appointed trial counsel, and in June 1985, denied all requested relief. There is no right of appeal from such a ruling, but Summit applied to the Louisiana Supreme Court for a Supervisory Writ. His application was denied by a four-to-three vote, without opinion, in December 1985. 478 So.2d 1231.

On January 2, 1986, Summit petitioned the district court for a writ of habeas corpus and stay of his execution, then scheduled for January 15, 1986. On January 8, the district court stayed his execution. That stay order is currently in effect. On January 23, 1986, the district court denied the writ of habeas corpus, but granted a certificate of probable cause as to one issue concerning *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985) (en banc), in the light of the Supreme Court's having granted certiorari in that case. *See Lockhart v. McCree*, —— U.S. ——, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985). The district court denied certificates of probable cause as to all other issues. Summit now appeals on the *Lockhart* issue and seeks certificates of probable cause as to the other issues addressed herein.

## II

On appeal, Summit first argues that he was denied his right to a fair trial under the sixth, eighth, and fourteenth amendments when qualified venire persons were excluded from both the guilt and penalty phases of his trial solely because they stated their opposition to the death penalty. *See Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.) (en banc), *cert. granted sub nom Lockhart v. McCree*, —— U.S. at ——, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985); *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

Summit's second argument is that during the guilt phase of the trial, the prosecutor made impermissible inquiries into and remarks about Summit's invocation of his post-arrest rights to remain silent and to confer with counsel. Summit claims that these remarks deprived him of the presumption of innocence and of his rights to a fair trial under the fifth, sixth, eighth, and fourteenth amendments.

Summit next argues that his appointed trial counsel was constitutionally deficient. He points to evidence that trial counsel spent little more than eighteen hours preparing for the trial, made little or no pretrial investigation, did not visit the scene of the crime, and did not inspect physical evidence in the state's possession until the morning of trial. He also alleges that counsel was deficient for failing to offer available evidence to support Summit's version of the events, or to make reasonable arguments to rebut the circumstantial evidence offered by the state. Counsel's deficiencies were so severe, says Summit, that they prejudiced his defense and deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Summit next argues that he was prejudiced at the penalty phase of his trial because the sentencing jury was led by the prosecution to believe, in violation of Summit's eighth amendment rights, that the ultimate responsibility for imposing the death penalty lay elsewhere. *See Caldwell v. Mississippi*, —— U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). He also argues that the sentencing jury received insufficient guidance from the judge so that the death penalty was imposed arbitrarily. *See Collins v. Lockhart*, 754 F.2d 258 (8th Cir.1985). In a related argument, Summit contends that the imposition of the death penalty in this case violates his eighth and fourteenth amendment rights because it is arbitrary and capricious. He also claims that he was denied the effective assistance of counsel at the penalty phase when counsel failed to introduce evidence that might have been a mitigating factor at sentencing, and that trial counsel failed to attempt to rehabilitate or to object to the prosecution's successful challenge of several venire persons. Summit additionally attacks

his sentence by arguing that the prosecution made an improper closing argument at the penalty phase by stating that Summit's lack of previous serious convictions meant only that "he'd never been caught before." We need not and do not address these penalty phase claims because we hold in Part IV of this opinion that the imposition of the death penalty must be reversed on other grounds.

We address each remaining issue in turn.

## III

### A.

■ Summit's first argument is that he was denied his right to a fair trial under the sixth, eighth and fourteenth amendments because a qualified group of venire persons was excluded from both the penalty phase and the guilt phase of his trial on the grounds that they were opposed to the death penalty. *See Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Summit's claim on this issue has been consistently rejected by this circuit, and is now foreclosed by the Supreme Court's recent decision in *Lockhart v. McCree,* — U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). *See Brogdon v. Blackburn,* 790 F.2d 1164 (5th Cir.1986) (per curiam).

### B.

■ Summit's next argument is that his fifth, sixth, eighth, and fourteenth amendment rights were violated when the prosecution made improper references to his post-arrest invocation of his rights to remain silent and to consult an attorney. Summit argues on appeal that these references were irrelevant to his trial testimony that he had offered exculpatory details to police officers prior to the taking of the partial taped statement. Citing *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 48 L.Ed.2d 91 (1976), Summit contends that the trial court erred by allowing the prosecutor to use for impeachment purposes the fact that he invoked his right to remain silent during the post-arrest interrogation.

According to Detective Johnson, Summit made a full, unrecorded, oral confession, shortly after having been arrested and having received his *Miranda* warnings, to having stabbed the victim while attempting to rob him. When Johnson later tried to record Summit's statement, Summit decided to remain silent, saying, "For my best benefit, I think I would be better off talking to a lawyer. I would like to give a statement, but I would also like to talk to a lawyer." At that point Johnson turned off the tape recorder and ended the interrogation. Summit, however, emphasized at trial that the night of his arrest, he wanted to tell the law enforcement officers what had happened, that three other men were involved in the crime, and that he wanted "to explain myself," but that the officers refused to listen to what he had to say. Johnson denied at trial that Summit had told him about the three men. The prosecutor asked Johnson if, after invoking his rights to silence and to counsel, Summit had ever come back to him later, with a lawyer, to make a statement. Johnson responded that Summit had not done so.

In *Doyle,* the defendants remained silent after arrest and after being advised of their right to do so. Each defendant then took the stand at trial and gave an exculpatory account of the crime. The prosecutor attempted to impeach each defendant by asking him why he had waited until trial to give his version of the facts. The Supreme Court held that such impeachment was constitutionally impermissible. Because *Miranda* requires that an arrestee be immediately advised that he has the right to remain silent, silence in the wake of receiving this warning may be nothing more than the exercise of that right. "Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." *Doyle,* 426 U.S. at 617, 96 S.Ct. at 2244.

The *Doyle* court noted in dictum, however, that although a defendant's post-arrest, post-*Miranda* silence may not be used for impeachment purposes, the fact of post-arrest silence may be used to challenge a

defendant who testifies at trial as to his behavior following his receiving the *Miranda* warnings at the time of arrest. *See id.* 426 U.S. at 619 n. 11, 96 S.Ct. at 2245 n. 11. This exception fits the situation we have before us. Summit testified at trial that he wanted to tell his story to the police but that they refused to listen to him. The police officers deny this; they claim that Summit first confessed and then refused to speak. In Summit's case, the fact of his eventual pretrial silence was used not to impeach his exculpatory testimony at trial that somebody else killed Toucheque, but rather "to challenge [his] testimony as to his behavior following arrest." *Id.* *See also Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (*Doyle* does not apply to cross-examination inquiring into prior inconsistent statements; state may use a defendant's post-arrest silence to challenge defendant's trial testimony that is inconsistent with statements allegedly made after receiving *Miranda* warnings); *United States v. Mireles,* 570 F.2d 1287, 1293 (5th Cir.1978). *Cf. United States v. Fairchild,* 505 F.2d 1378, 1383 (5th Cir.1975) (defendant's post-arrest, post-*Miranda* silence admissible only for purpose of rebutting impression that he had actively cooperated with the police). Because Summit did not remain silent, but offered information to the police immediately after receiving his rights, there is not the same kind of ambiguity in his eventual silence as existed in *Doyle.*

In a related argument, Summit claims that the prosecutor violated Summit's right to a fair trial when, in his closing argument, he reiterated the same point with respect to Summit's failure to come forward to the police with his story. We have reviewed the record, and, viewing the prosecutor's argument in its entirety, we cannot say that this is an egregious case or that any defect of constitutional proportions was created by the prosecutor's remarks. *See, e.g., Menzies v. Procunier,* 743 F.2d 281, 288–89 (5th Cir.1984) (prosecutor's argument will, in itself, exceed constitutional limitations in only the most "egregious cases") (quoting *Houston v. Estelle,* 569 F.2d 372, 382 (5th Cir.1978)).

### C.

Summit, through the hindsight of new counsel, claims ineffective assistance of counsel at trial. He alleges primarily that his attorney was a very young individual who just met the five-year requirement of the Louisiana statute, and was appointed without co-counsel to defend a capital case. Summit claims that his attorney was "devastated" by the guilt phase, and did little or nothing at the penalty phase. He argues that the failings of his trial counsel were so severe that there is a "reasonable probability" that at least one juror would have harbored a reasonable doubt at the guilt phase or at the penalty phase if trial counsel had been competent.

██ In order to succeed on his claim of ineffective assistance of counsel, Summit must satisfy the test set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To constitute ineffective assistance of counsel under the Constitution, counsel's performance must have been not only defective but also prejudicial to the defense. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* 466 U.S. at 691, 104 S.Ct. at 2067. To prove prejudice, Summit must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *Id.* at 694, 104 S.Ct. at 2068.

██ Summit's initial point on his argument that counsel was insufficiently prepared before the trial is that counsel had spent less than nineteen hours on the case by the morning the trial started. He also claims that counsel spent no time on factual investigation of the case. Summit points to one of the exhibits to show that trial counsel did not know whether the men's

room of the rest stop building where the crime occurred had a back door, and therefore counsel was inadequately prepared to rebut the arresting officers' version of the events. Summit claims that if trial counsel had explored the scene of the crime prior to trial, he would have recognized the internal inconsistencies of the confession that Summit is alleged to have made.

Summit also claims as part of his ineffective assistance of counsel argument that his trial counsel did not make any effort to track down "the true murderer." Summit's version of the events is as follows. Three man in a red Buick with Ohio license plates picked him up while he was hitchhiking near Beaumont, Texas. He shared the backseat with a man named Mike, who was wearing blue short pants and a tee-shirt. He described Mike as a "very strange" person who carried a number of knives in a hiking sack and always had one in his hands during the trip. He said that Mike worked in the offshore oil industry and had a "Z" card or registration card issued by the federal government. Summit said that the two other men with Mike were named Chester and Mike; that these two men also probably had government "Z" cards; and that they were all originally from Cincinnati, Ohio. He said that he was asleep when they arrived at the rest area near Lafayette. When he awoke and went into the bathroom, Mike followed him. As Summit was washing his hands and face, he heard a commotion and noticed in the mirror that Mike was struggling with another man in the rest room. He went over to assist but was cut on the hand by a knife that Mike was wielding. Afraid that Mike was going to use the knife on him, Summit fled the bathroom. Summit claims that trial counsel made no attempt to investigate Summit's version of the events.

Summit also states that appointed trial counsel did not examine the physical evidence until the first day of trial, even though he knew that the government had in its possession physical evidence taken from and near the scene of the crime. He argues that examination of his knife pouch as compared with the knife described in the coroner's report would show that his knife could not possibly have been the murder weapon, and that trial counsel ought to have pointed this out to the jury so as to raise in the jury reasonable doubt as to Summit's guilt.

Finally, Summit argues that his trial counsel failed sufficiently to rebut or object to the circumstantial evidence of the crime that was introduced by the state, and failed to give sufficient thought to circumstantial evidence that supports Summit's version of the incident. Although Summit's knife has never been found, he argues that competent trial counsel would have been able to raise reasonable doubts as to whether Summit's missing knife was indeed the murder weapon.

Without a showing of prejudice, Summit cannot succeed on his ineffective assistance of counsel claim under *Strickland.* We have reviewed the entire record, and conclude that the evidence that Summit killed Toucheque is so solid and convincing that even had trial counsel performed as Summit now says he ought to have performed, there is no reasonable probability that the result of the guilt phase of Summit's trial would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. First, Summit fled the men's room, the scene of the crime, at almost the same time that the wounded Toucheque stumbled from another exit of the same building. Second, Summit continued to flee when chased by someone who had seen him run out of the men's room; he then hid until he was captured by law enforcement officers. Third, when found, Summit had on his person blood of a type different from his own. Fourth, Toucheque was killed with a knife, and Summit's knife was missing from its sheath when he was arrested. And, finally, as two police officers testified at trial, Summit confessed to having stabbed Toucheque.

Having examined this evidence, and having considered all of the deficiencies in his trial counsel's performance that are alleged by Summit, we hold that there is no reason-

able probability that additional investigation or more thorough presentation of Summit's case could have effectively weakened the incriminating power of the evidence against him. Irrespective of the alleged deficiencies in representation, the evidence of guilt created by the combination of circumstances could not have been explained away to a reasonable-minded juror. In the absence of a showing of prejudice, then, Summit's arguments that the result of the guilt phase of his trial is unreliable under *Strickland* have no merit.

## IV

■ Summit's next argument concerning ineffective assistance is substantial. He argues that trial counsel was woefully deficient because he failed to note, object to, or argue the lack of corroborating evidence of the attempted armed robbery. Summit was prosecuted for capital murder because it was alleged that he intentionally killed while engaged in the perpetration of a felony, attempted armed robbery. Summit argues that there is no evidence of the attempted armed robbery other than Summit's oral unrecorded confession. The state offered evidence of the intentional killing, but, he contends, it offered no corroborating evidence of the aggravating felony that would make the crime first degree murder. First degree murder is the only homicide crime in Louisiana that carries a potential death sentence. *See* La.Rev.Stat. Ann. § 14:30(C) (West 1986).

It is well settled by the Louisiana courts, and is conceded here by the state, that an accused party cannot be legally convicted on his own uncorroborated confession without proof that a crime has been committed by someone, that is, without some other proof of the corpus delicti. *State v. Ring*, 461 So.2d 1162, 1166 (La.Ct.App.1985); *State v. Celestine*, 452 So.2d 676, 678 (La. 1984); *State v. Miller*, 448 So.2d 137, 142 (La.Ct.App.1984); *State v. Reed*, 420 So.2d 950, 951 (La.1982); *State v. Willie*, 410 So.2d 1019, 1029 (La.1982); *State v. Ashley*, 354 So.2d 528 (La.1978); *State v. Morgan*, 157 La. 962, 103 So. 278 (1925). The

corpus delicti must be proved by evidence which a jury might reasonably accept as establishing the fact beyond a reasonable doubt. *State v. Miller*, 448 So.2d at 142; *State v. Willie*, 410 So.2d at 1029; *State v. Carson*, 336 So.2d 844 (La.1976). Summit contends that there is no evidence whatsoever that an armed robbery was attempted on the murder victim, other than Summit's alleged statement made the night of the crime. Because there is no direct or circumstantial evidence corroborating the charge of attempted armed robbery, argues Summit, his conviction of capital murder violates the corpus delicti rule. He claims to have been prejudiced by trial counsel's failure to properly and timely raise the corpus delicti issue in the trial court. Summit's argument is based on the presumption that there is a reasonable probability that if the trial court had been presented with this claim, Summit would not have been convicted of first degree murder, and thus would not have been sentenced to death. We agree.

Our thorough examination of the entire record in this case has brought to light no evidence that the murder victim Toucheque was also a victim of an attempted armed robbery. Indeed, the state does not argue that any evidence other than Summit's confession supports a finding of attempted armed robbery. Apart from the tears resulting from the stabbing, Toucheque's clothing and pockets showed no signs of having been disturbed. His wallet and personal effects were intact. When he was arrested, Summit had four twenty-dollar bills folded neatly in one compartment of his wallet, and a one-dollar bill in another compartment. Summit claimed the money was his, and there is no evidence whatsoever that this is not true. The bills appeared to have been in place for some time. There is no evidence that either Summit's wallet or the bills had blood on them. We thus find merit in Summit's contention that the state failed to present sufficient evidence to support a conviction of attempted armed robbery under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct.

2781, 61 L.Ed.2d 560 (1979). *See State v. Miller,* 448 So.2d at 142.

Summit has demonstrated that he was prejudiced in the sentencing phase of the trial by counsel's failure to argue corpus delicti to the trial court. If counsel had presented such an argument at trial, and/or moved for a post-verdict judgment of acquittal or a modification of the verdict for a conviction on a lesser included responsive offense, *see* La.Code Crim.Proc.Ann. art. 821 (West Supp.1986), there is more than a reasonable probability that Summit would not have been convicted of first-degree murder, the only homicide offense under Louisiana law that carries the death penalty. We therefore hold that Summit was denied his constitutional right to the effective assistance of counsel at the penalty phase of his trial.*

## V

The district court's granting a certificate of probable cause on Summit's *Lockhart* claim is reversed. Summit's application for a certificate of probable cause is DENIED as to all other issues except his claim of ineffective assistance of counsel concerning the Louisiana corpus delicti rule, which is GRANTED. On that ground alone, therefore, the district court is REVERSED, and this cause is REMANDED with instructions to enter a conditional grant of the writ as to the penalty phase of the trial, conditioned on Louisiana's imposing on Summit a sentence less than death.

REVERSED IN PART AND REMANDED.

---

* Although our decision to reverse the imposition of the death penalty is based on ineffective assistance of counsel, imposing the death penalty on Summit is also unconstitutional on the grounds that the evidence put forward in this case is insufficient to support a capital murder conviction under Louisiana law. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).