EDWIN A. LOMBARD, Judge.
 

 11 Christopher Collins appeals his eonvic
 
 *270
 
 tion for second degree murder.
 
 [1]
 
 After review of the record in light of the applicable law and arguments of the parties, we affirm the defendant’s conviction and sentence.
 

 Relevant Facts and Procedural History
 

 On October 23, 1991, Cornell Coleman, a janitor at the naval base on Poland Avenue, was murdered in the 2400 Block of South Liberty Street in New Orleans, Louisiana. On October 11, 2006, defendant was charged by grand jury indictment with the second degree murder of Mr. Coleman in violation of La.Rev.Stat. 14:30.1. He pleaded not guilty on November 29, 2006. On December 12, 2006, on defense motion, the trial court appointed a sanity commission to determine defendant’s competency to stand trial. On January 18, 2007, Dr. Damon Tohtz testified regarding the psychiatric evaluation of the defendant conducted by himself and Dr. Deland. Pursuant to their evaluation, the trial court ordered that |2the appellant to be placed in the Orleans Parish Prison competency program and to be placed on the waiting list to be transported to the East Feliciana Medical Health System. Continued competency hearings were held on November 15, 2007, February 14, 2008, and on July 17, 2008, when the defendant was found competent to stand trial.
 

 Again, on April 2, 2009, the trial court appointed a sanity commission to determine defendant’s competency to stand trial on defense motion. On May 27, 2009, the trial court found the defendant competent to stand trial. On September 4, 2009, the trial court denied the defendant’s motion to suppress his statement. Trial commenced on October 6, 2009, and the following day the jury found the defendant guilty as charged.
 

 On October 21, 2009, the defendant filed motions for new trial and for post-verdict judgment of acquittal, which the trial court denied. The defendant waived any legal delays and pronounced ready for sentencing. The trial court sentenced the defendant to life imprisonment without benefit of probation, parole, or suspension of sentence. The defendant
 
 [2]
 
 now appeals, arguing that (1) the evidence is insufficient to support his conviction; (2) the trial court erred in denying his motion for a new trial; and (3) the jury instruction permitting a non-unanimous verdict was unconstitutional.
 

 Assignment of Error I
 

 The defendant contends that the evidence was insufficient to support his conviction. Specifically, he argues that there is insufficient evidence to establish that he intended to kill or commit great bodily harm and that the evidence | ^introduced at trial is insufficient because his uncorroborated confession was used to establish the
 
 corpus delicti
 

 Sufficiency of the Evidence
 

 The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When circumstantial evidence is used to prove the commission of the offense, La.
 
 *271
 
 Rev.Stat. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This statutory test works with the
 
 Jackson
 
 constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury.
 
 State v. Rosiere,
 
 488 So.2d 965, 968 (La.1986).
 

 In order to obtain a conviction, the State must prove the elements of the crime charged beyond a reasonable doubt. The defendant was convicted of second degree murder, defined in pertinent part by La.Rev.Stat. 14:30.1 as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm, or when the offender is engaged in the perpetration or attempted perpetration of, among other felonies, armed robbery or simple robbery.
 

 Specific criminal intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La.Rev.Stat. 14:10(1). Specific intent need not be proven as fact, but may be inferred from the circumstances and actions of the defendant.
 
 State v. Hebert,
 
 2000-1052, p. 12 (La.App. 4 Cir. |44/11/01), 787 So.2d 1041, 1050. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person.
 
 State v. Guy,
 
 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, 521.
 

 The following evidence was adduced at trial. The decedent’s mother, Pamela Coleman Swinney, testified that in October of 1991, she and her son, Cornel Coleman, lived in the 2300 block of First Street, in New Orleans. Ms. Swinney had lived in the same neighborhood for about fifteen years and was familiar with the defendant from seeing him around the neighborhood. She identified him in court. On the day of her son’s death he came home from work at the naval base about 6:00 p.m. and an hour or two later told his mother he was going for a short walk and would be right back. That was the last time Ms. Swinney saw her son alive. Someone knocked on her door and informed her that he had been shot and she went to the scene where a crowd had gathered around his body lying on the ground. She saw defendant in the crowd and when he saw her, he ran. Ms. Swinney acknowledged that she had previously been convicted for possession of diazepam, cocaine and marijuana.
 

 Detective Wayne Rumore testified that on in October 23, 1991, he was a homicide detective with the New Orleans Police Department (NOPD) and that he investigated the death of Cornell Coleman which took place in the 2400 Block of South Liberty Street, in New Orleans, Louisiana. At the time of trial, Detective Rumore was still employed by the NOPD in the Mounted Division. He related that when he arrived on the scene he observed that the address was an abandoned house. There was a cement slab off to the side of the structure and a body was lying down on the slab. He observed that there was a broken cigarette in the |svictim’s hand and there was a lighter by his right leg. There was a gunshot wound or “hole” on the top of the victim’s head.
 

 A .22 caliber semi-automatic pistol was found on the scene, to the side of the building, not far from First Street in some bushes. Detective Rumore identified a series of photographs of the crime scene, which were later introduced into evidence. Detective Rumore stated that he remained on the scene for approximately one hour. He was not able to locate any eyewitnesses, but he did conduct some interviews
 
 *272
 
 during the course of his investigation, from which he developed Christopher Collins as a suspect. After two or three months, Detective Rumore was no longer involved actively with the case.
 

 Officer Karl Palmer, a NOPD crime scene technician, testified that he processed the crime scene at the corner of South Liberty and First Street. He photographed the scene and collected the weapon, a Jennings .22 caliber semi-automatic pistol. The gun was empty. He returned the weapon to the crime lab where he dusted it for prints with negative results.
 

 Officer Kenny Leary, a NOPD firearm examiner, testified that he compared the bullet recovered from the Mr. Coleman’s autopsy to determine whether it was fired by the weapon recovered at the scene. He compared the bullet to a test bullet fired from the weapon but was unable to make a determination because the autopsy bullet exhibited insufficient striae to reach a conclusion.
 

 Sergeant Robert Blanchard testified that the evidence from the case located in NOPD Central Evidence and Property had been destroyed by flood waters during Hurricane Katrina.
 

 Tammy Connella, a record clerk with the Pineville Police Department, testified that on November 5, 2005, the defendant entered the Pineville Police | (¡Department station. As her duties included greeting the public, she asked Mr. Collins how she could help him, and he stated that he needed to speak with an investigator. Ms. Connella asked the defendant what it was in reference to so she could properly direct him. He told her he had some things he needed to get off his mind. Appearing nervous and wringing his hands, he stated that he had committed a murder, that he had killed somebody. Ms. Connella informed Captain Dana Rachal of the circumstances and then took Mr. Collins back to the Captain’s office.
 

 Captain Rachal testified that in 2005 he was the Commander of the Criminal Investigations Bureau in Pineville, Louisiana. Captain Rachal related that after he obtained the defendant’s personal information, he had the defendant complete a rights of arrestee form. After completing the form, the defendant hesitated for a moment and then said, “I can’t do this right now.” Captain Rachal walked Mr. Collins out, and he and Ms. Connella watched him walk off down the street.
 

 Approximately an hour later, the defendant returned. Ms. Connella escorted him back to his office and Captain Rachal began the process of completing the rights of arrestee form again. After the defendant had been advised of his rights and signed the form, he began his statement. He told Captain Rachal that the homicide occurred in either 1994 or 1995 at the corner of First and South Liberty Street in New Orleans. Mr. Collins stated that he approached the victim, whom he knew as CC, at the corner, produced a gun, and indicated that he wanted his money back. Mr. Collins explained that there had been an earlier altercation wherein Mr. Coleman had robbed him at gunpoint of $2,000. Captain Rachal got the impression that this incident occurred not long before, perhaps a few days or a week earlier.
 

 |7Mr. Collins explained that Mr. Coleman told him he did not have any money; that a struggle ensued over the firearm; and that the firearm discharged, striking Mr. Coleman in the forehead. Mr. Collins stated that the weapon was a .25 caliber semi-automatic chrome pistol. He told him that the gun was loaded, but that it only had one bullet in the gun.
 

 Captain Rachal then went over the statement with Mr. Collins. At that time,
 
 *273
 
 Mr. Collins explained that Mr. Coleman slapped the weapon and that it discharged, striking him in the forehead. He stated that he did not intend to kill Mr. Coleman. Captain Rachal believed that the interview lasted approximately forty-five minutes.
 

 After he had completed his statement, Captain Rachal asked the defendant if he could remain at the station while he attempted to verify the information. Captain Rachal then called the New Orleans Police Department and spoke to the commander of the cold case squad, Jimmy King, who advised him that it would take him some time to verify the information because things were still in some disarray from the Hurricane Katrina. Commander King did call back later that day to say that he had confirmed that Mr. Coleman had been shot and killed at the location identified. He advised that it would take some time to locate the files and verify the information any further.
 

 Captain Rachal advised Mr. Collins that he could not do anything further that day until they had verified additional information, and then someone from his office took Mr. Collins home. He believed that Mr. Collins was at the station until about 2:00 o’clock in the afternoon. He stated that he was very cooperative, and that they even fed him lunch that day.
 

 Detective Winston Harbin, of the New Orleans Homicide Division, testified that after being assigned the case, he obtained the original case file from their |Rarchives. Then he contacted the detectives in Pine-ville to see how their information compared to the information in the report. Detective Hardin noted that after speaking with the Pineville detectives, it was obvious there was some validity to the confession. As a result, he and his partner traveled to Pineville in an effort to interview the defendant but were unsuccessful in locating him. On November 18, 2005, he applied for and obtained a warrant for the defendant’s arrest.
 

 Detective Robert Guesnon testified that in August 2006 he arrested the defendant for an outstanding warrant in the 3300 block of Claiborne Avenue after completing a traffic stop.
 

 The defendant argues on appeal that no evidence was submitted which established the intent to kill or inflict great bodily harm.
 
 [3]
 
 Specifically, he notes that there was no evidence from any witness to the killing and that the only evidence offered about the killing itself came from his statement, which did not establish the specific intent to kill. Rather, the defendant notes, his statement established that the gun discharged accidentally during a struggle or when the decedent slapped the gun.
 

 However, although the defendant’s statement suggests that the gun discharged accidentally, the circumstantial evidence offered at trial directly contradicted the defendant’s statement. Detective Rumore observed that rather than suffering a gunshot to the forehead as indicated by Mr. Collins in his statement, the victim suffered a gunshot to the top of his head. Also, Detective Rumore observed that there was a broken cigarette in the victim’s hand and that |9there was a lighter by his right leg. From these facts, a reasonable juror could have found that the victim was shot while leaning forward and attempting to light a cigarette.
 
 [4]
 
 Also,
 
 *274
 
 the fact that the cigarette remained between the victim’s fingers upon death directly contradicts the suggestion that the gun went off during a struggle. The defendant’s statement acknowledged that he was holding the gun when the fatal shot was fired. This coupled with the circumstantial evidence was clearly sufficient to establish the element of specific intent to kill. Thus, sufficient evidence supports the defendant’s conviction.
 

 Corpus Delicti
 

 In Louisiana, an accused cannot be convicted on his own uncorroborated confession without proof that a crime has been committed by someone.
 
 State v. Martin,
 
 93-0285 (La.10/17/94), 645 So.2d 190, 195;
 
 State v. Cruz,
 
 455 So.2d 1351, 1355 (La.1984). Accordingly, the prosecution must show that the injury specified in the crime occurred and that the injury was caused by someone’s criminal activity.
 
 Martin, supra
 
 (citation omitted). “The touchstone is trustworthiness-an untrustworthy confession should not alone support a conviction, and corroboration is an effective test of the trustworthiness of a person’s inculpatory statements.”
 
 Martin,
 
 93-0285, 645 So.2d at 195.
 

 The defendant argues, citing federal caselaw,
 
 Summit v. Blackburn,
 
 795 F.2d 1237 (5th Cir.1986), that the evidence submitted in this case is insufficient because his purportedly uncorroborated confession failed to establish every element of the crime. In
 
 Summit,
 
 the court reversed a conviction of first degree murder on a claim of ineffective assistance of counsel for failing to object to or raise the issue of the 11 nlack of corroboration of the defendant’s statement that the murder occurred during the commission of an attempted armed robbery. However, the defendant’s reliance on
 
 Summit
 
 is misplaced. In
 
 Martin, supra,
 
 the Louisiana Supreme Court rejected the defendant’s
 
 Summit
 
 argument because the decision unjustifiably extended the Louisiana’s
 
 corpus delicti
 
 rule which requires only corroboration of the reliability of an inculpatory statement, stating:
 

 The rule should not be extended to add a requirement that independent evidence corroborate every element of the crime admitted in the accused’s statement, the general reliability of which has been corroborated. Corroborating evidence need only show the essential injury involved in the charged crime (e.g., death caused by criminal activity in a murder charge) in order to establish the reliability of the inculpatory statements of the accused;
 
 the corroborating evidence need not show every element in the definition of the charged crime
 
 (e.g., the predicate felony in a felony murder).
 

 State v. Martin,
 
 645 So.2d at 195 (emphasis added).
 
 See also State v. Thibodeaux,
 
 1998-1673, p. 12 (La.9/8/99), 750 So.2d 916, 927
 
 (“Martin
 
 removed any confusion over the scope of the rule by expressly holding that the state need not produce independent evidence corroborating every element of the crime admitted in the accused’s statement as long as it establishes the commission of a criminal act.”)
 

 Here, because the victim was found dead with a bullet hole to the top of his head, the evidence presented at trial clearly established the presence of a criminal act. Furthermore, the location of the incident, the identity of the victim, that the victim was shot in the head, and the discovery of an unloaded weapon, all thoroughly cor
 
 *275
 
 roborated many key elements of defendant’s statement.
 

 Accordingly, we find no merit in this assignment of error.
 

 |
 
 ¡¡Assignment of Error 2
 

 By this assignment of error the defendant contends that the trial court erred in denying his motion for new trial pursuant filed pursuant to La.Code Crim. Proc. art. 851(1), arguing that the verdict was contrary to the law and the evidence.
 
 [5]
 

 Initially, the defendant suggests that the trial court erred in failing to afford him a contradictory hearing on his motion for new trial; however, the record reflects that defendant submitted the motion without argument, and there is nothing to suggest that the defendant intended to call any witnesses or submit any evidence, or that he was prevented from doing so.
 

 As to the substance of his claim, the defendant raises essentially the same argument that he raised with respect to his sufficiency claim,
 
 ie.,
 
 the trial court erred in denying his motion for a new trial because the verdict is not supported by the evidence. It has long been held in Louisiana that an assignment of error based on the refusal of the trial court to grant a new trial on the grounds that the verdict was contrary to the law and evidence presented nothing for appellate review.
 
 State v.Gray,
 
 351 So.2d 448, 461 (La.1977);
 
 State v. Bartley,
 
 329 So.2d 431, 433 (La.1976). However, this was partially overturned in
 
 State v. Guillory,
 
 2010-1231, pp. 3-4 (La.10/8/10), 45 So.3d 612, 614-615 wherein the Louisiana Supreme Court determined that a grant or denial of a motion for new trial pursuant to La.Code Crim. Proc. art. 851(5) presents a question of law that is subject to appellate review and is reviewed for abuse of discretion. It remains unclear whether
 
 Guillory
 
 is limited to motions filed pursuant to La.Code Crim. Proc. art. 851(5) or whether it 112is applicable to, as is the case here, motions filed pursuant to La.Code Crim. Proc. art. 851(1).
 

 In this case we have reviewed the evidence and found that it is sufficient to support the verdict. Thus, even accepting
 
 arguendo
 
 that
 
 Guillory
 
 is applicable to the denial of a motion filed pursuant to La. Code Crim. Proc. art. 851(1), the trial court clearly did not abuse its discretion in denying the motion. Accordingly, this assignment of error is without merit.
 

 Assignment of Error 3
 

 The defendant argues that the jury instruction in his case permitting conviction by less than a unanimous vote of the jury was unconstitutional. Pursuant to La.Code Crim. Proc. art. 782(A), a non-unanimous verdict is allowed in non-capital felony cases.
 
 [6]
 
 Moreover, the record does not reflect that defendant objected to the jury charge and, thus, in accordance with La.Code Crim. Proc. art. 930.4, we are procedurally barred from considering the defendant’s constitutional challenge to La. Code Crim. Proc. art. 782.
 
 State v. Bertrand,
 
 2008-2215, 2008-2311, p. 8 (La.3/17/09), 6 So.3d 738, 743. Finally, because defendant did not request that the jury be polled, the record does not reflect whether the jury rendered a non-unani
 
 *276
 
 mous verdict in this case. The defendant therefore lacks standing to raise the issue as there is nothing to show that he was actually harmed by the purported error. This assignment of error is without merit.
 

 Conclusion
 

 The defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . On January 27, 2011, this court granted the defendant forty-five days to file a
 
 pro se
 
 supplemental brief. This time period has expired and neither the brief nor a motion for extension of time has been filed by the defendant.
 

 [2]
 

 . Pursuant to a
 
 pro se
 
 motion filed by the defendant, on January 27, 2011, this court issued an order transferring the record to the Louisiana State Penitentiary Legal Program Department and granting the defendant forty-five days to file a brief in this matter.
 

 [3]
 

 . The defendant also contends that the evidence was insufficient to establish that the crime occurred during the commission of an armed robbery. However, because the State did not suggest the defendant’s guilt under this theory and the evidence is sufficient to establish specific intent, we pretermit further discussion of this alternative theory.
 

 [4]
 

 . Notably, the location of the entry point of the bullet at the top of the victim’s head made
 
 *274
 
 it nearly impossible to believe that the gun discharged accidentally, either during a struggle or as a result of Mr. Coleman slapping it.
 

 [5]
 

 . In his brief, the defendant suggests that his motion for new trial also urged as a ground thereof, that the ends of justice would be served by granting a new trial as provided by La.Code Crim. Proc. art. 851(2). However, review of the record reflects that the defendant did not raise this ground in his motion for new trial.
 

 [6]
 

 . La.Code Crim. Proc. art. 782(A) states in pertinent part that "[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.” The instant case was one in which punishment was necessarily confinement at hard labor.