WR-84,092-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/9/2015 3:09:47 PM
Accepted 11/9/2015 3:24:14 PM
ABEL ACOSTA
CLERK

WRIT NO. 1293649-A
TRIAL COURT NO. 1293649

RECEIVED
COURT OF CRIMINAL APPEALS
11/9/2015
ABEL ACOSTA, CLERK

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | |
| | § | 182ND JUDICIAL DISTRICT |
| | § | |
| RICHARD HAMER | § | HARRIS COUNTY TEXAS |

## MEMORANDUM IN SUPPORT OF APPLICATION FOR A WRIT OF HABEAS CORPUS SEEKING RELIEF FROM FINAL FELONY CONVICTION UNDER CODE OF CRIMINAL PROCEDURE, ART. 11.07

**TO THE HONORABLE PRESIDING JUDGE:**

**NOW COMES** RICHARD HAMER, Applicant and files this Memorandum in Support of Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under Code of Criminal Procedure, Art. 11.07 and would show this Honorable Court the following:

### I.

### History of Case

Hamer was charged with the offense of manslaughter by indictment which alleged:

> . . . Richard Hamer, hereafter styled the Defendant, heretofore on or about January 9, 2011, did then and there unlawfully, and recklessly cause the death of Derrick Jones by speeding, failing to maintain a proper lookout, failing to control speed, disregarding a traffic control device, failing to yield the right of way and failing to stop at a designated point.

Memorandum in Support of Application for a Writ of Habeas Corpus - Page 1

The facts of the case used by the prosecution are set out in the probable cause affidavit which stated:

> Affiant has reviewed the Houston Police Department offense report number 0038004411D, and saw that on January 9, 2011 at approximately 1618 hours, HPD officers were dispatched to a fatality crash located at 12600 Gessner at 10200 South Sam Houston Parkway West, both public roadways in Houston, Harris County, Texas. Affiant observed the scene to involve two vehicles at the intersection of South Gessner and South Sam Houston Parkway west service road. Affiant observed that there was a red Saturn that was traveling north bound on South Gessner when the suspect was traveling west bound on the South Sam Houston Parkway west service road (also know as Beltway 8) in a Ford F-250.
>
> Affiant reviewed a supplement made by HPD officer C. Long who did a hospital check on the front seat passenger of the red Saturn involved in the crash, identified as Denzel Anthony, hereafter Complainant. Complainant suffered massive head injuries and is living in a vegetative state due the injuries and is not capable of caring for himself. Before the wreck the Complainant was a normal and healthy person. The driver of the red Saturn died at the scene, he was identified as Derrick Jones.
>
> Affiant reviewed a statement made by witness Davis Moses, a credible and reliable person, who stated that he was traveling the same direction as the red Saturn, north on South Gessner. Witness Moses stated that the Saturn was one to two car lengths in front of witness Moses when he entered the intersection. Witness Moses stated the light was green for the Saturn and himself. Witness Moses stated that he saw a pick-up truck traveling west on the service road at a high rate of speed and it struck that red Saturn.
>
> Affiant reviewed a statement by witness Victor De La Garza, a credible and reliable person, who stated he was moving into lane one (the far left lane of the three lanes) heading north on South Gessner in order to make a left turn on to the service road. Witness De La Garza stated that his light on South Gessner was green and the[n] he looked up and saw the truck strike the red car. Witness De La Garza was traveling north on South Gessner in the same direction as the red Saturn.

Affiant reviewed a statement made by the Defendant, who was identified by his Arkansas driver's license as Richard Hamer, dob 8.20.1977, hereafter Defendant who stated that he was traveling west bound on the South Sam Houston Parkway west service road in a Ford F-250 pick-up truck. The Defendant stated that he proceeded through the intersection knowing the light was about to turn red but thought he could make it. The Defendant stated he believed he was only traveling 45-50 miles per hour when he entered the intersection and he admitted to not attempting to stop prior to the crash.

Affiant reviewed scene photographs, the crash report, statements from the witnesses, the timing of the lights and reports from the scene investigation and was able to use his expertise as an accident reconstructionist to determine what occurred during this crash. Affiant was able to determine that the Defendant was traveling west bound on the South Sam Houston Parkway west service road the Complainant was a passenger in the red Saturn that was traveling north on South Gessner. The vehicle the Complainant was in suffered very heavy right passenger side damage and the Defendant's vehicle sustained heavy front left damage and driver's side damage. Affiant also noted that his intersection is controlled by traffic control signals in all directions, and that those signals were operating normally at the time of the crash. In looking at the report of the traffic control signals, at the time of the crash, the Defendant's light was red and the Complain[an]t's light was green. The traffic control signal report indicated that the Defendant would have had a yellow light for 3.5 seconds followed by 1 second of a red light before the Complainant's vehicle would have then had a green light and this also indicated to Affiant that the Defendant would have been 469 feet away from the intersection, with ample amount of time to stop before entering the intersection. Using the Defendant's speed of 70 mph, at that distance, the Defendant still had ample distance to safety stop before entering the intersection. Using the physical evidence combined with the download and the witness statements, Affiant was able to determine that the Defendant was traveling at approximately 70 mph when he entered the intersection and at impact with vehicle occupied by the Complainant. In addition, using his training and experience, your Affiant is able to determine that the Defendant did not brake or attempt to avoid the crash at all. The posted speed limit on the roadway in which the Defendant was traveling is 45 mph.

Affiant is trained in accident reconstruction and in his training and experience is able to determine that the Defendant was speeding at least 25 mph over the speed limit, failed to maintain a proper lookout, failed to maintain his speed, disregarded a traffic control device and failed to yield right of way when he did not stop at the red light. Affiant also knows these acts to be reckless and to cause serious bodily injury or death when operation a motor vehicle.

Affiant also knows from his training and experience that a motor vehicle is a deadly weapon.

On January 20, 2012, Hamer appeared in court with counsel, Dawn Kibler, and entered a plea of guilty to manslaughter. There was no plea agreement. The court assessed a sentence of 15 years imprisonment.

## II.

## Ground for Relief One

Hamer received ineffective assistance of counsel in violation of the U. S. Const., amends. VI and XIV.

## Summary of Argument

Hamer received ineffective assistance of counsel. He was involved in a vehicle accident that resulted in the death of another person. Defense counsel advised Hamer to enter an open plea of guilty to manslaughter to the court and allow the court to set punishment. The court set punishment at 15 years in prison. There was a legitimate and meritorious defense to be presented to the manslaughter charge which defense counsel did not present. This defense was that, if Hamer was guilty at all, it was of the offense of criminally negligent homicide, rather than manslaughter.

Counsel was ineffective in advising Hamer to plead guilty to manslaughter and not fully explaining his options to him. Had counsel fully explained the evidence and difference between the charges of manslaughter and criminally negligent homicide, Hamer would not have entered a plea to manslaughter. Had counsel fully explained the evidence in this case, Hamer would have entered a not guilty plea and taken the case to trial. Under the facts of this case, Hamer would not have been found guilty of manslaughter or received 15 years in prison.

## III.

## Statutory Provisions

**PEN. §19.04. MANSLAUGHTER**
(a) A person commits an offense if he recklessly causes the death of an individual.
(b) An offense under this section is a felony of the second degree.

**PEN. §19.05. CRIMINALLY NEGLIGENT HOMICIDE**
(a) A person commits an offense if he causes the death of an individual by criminal negligence.
(b) An offense under this section is a state jail felony.

**PEN. §6.03. DEFINITIONS OF CULPABLE MENTAL STATES**
. . .
(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of

his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

## IV.

## Was Hamer Guilty of Manslaughter or Criminally Negligent Homicide?

Defense counsel advised Hamer to plead guilty to manslaughter without explaining to him the law concerning manslaughter and criminally negligent homicide By pleading guilty, Hamer conceded that he acted recklessly, rather than negligently. However, an examination of the statutory definition shows that there was, at the very least, a strong argument to be made that the proper offense for Hamer to have been charged with was criminally negligent homicide. Counsel failed to explain the law to Hamer, tell him of this option to plead not guilty to manslaughter, and argue that he was actually guilty only of criminally negligent homicide. The result of this lack of explanation of his options was that Hamer pled guilty to manslaughter and received 15 years. He gave up a good argument that he was not guilty of manslaughter. *See, Stadt v. State*, 120 S.W.3d 428, 428 S.W.3d 428 (Tex. App. - Houston [14th Dist. 2003]), affirmed on P.D.R., 182 S.W.3d 360 (Tex. Crim. App. 2005) (criminal negligent homicide found in connection with traffic accident); *Thompson v. State*, 676 S.W.2d 173 (Tex. App. - Houston [14th Dist.] 1984) (criminally negligent homicide found as a result of traffic accident).

Memorandum in Support of Application for a Writ of Habeas Corpus - Page 6

Among the many reasons why this was a case of negligence, rather then recklessness, is the following:

1. The evidence shows both vehicles were speeding.

2. Hamer's tire size affected the accuracy of the speedometer in his vehicle.

3. The yellow light which Hamer went through was a significantly shorter than recommended by official sources.

4. The complainant was under the influence of marijuana and Xanax.

5. The passenger in Hamer's vehicle believed he had plenty of time to make it through the yellow light.

A copy of a memo sent from defense counsel to the prosecutor laying out this information is attached to this memorandum. Even though defense counsel knew these facts, she failed to explain them to Hamer or tell him that these facts show that while he may have been negligent, he was not reckless.

Moreover, under the Rule of Lenity, the proper charge in this case was criminally negligent homicide. The Rule of Lenity is a rule of statutory construction that resolves doubts in the enforcement of a penal code statute against the imposition of a harsher punishment. If a provision is subject to two interpretations, it is to be construed in favor of the interpretation that imposes the less harsh punishment. *See Cuellar v. State*, 70 S.W.3d 815 (Tex. Crim. App. 2002). Here, the alleged conduct could potentially be construed to fit under either the manslaughter statute or the

criminally negligent homicide statute. Under the Rule of Lenity, the proper statutory interpretation is that this conduct constitutes criminally negligent homicide.

By not fully explaining the differences between manslaughter and criminally negligent homicide, counsel rendered ineffective assistance. Had Hamer known the elements of these offenses, he would not have pled guilty to the greater offense of manslaughter.

## V.

## Ineffective Assistance of Counsel - Governing Law

It is well established that a defendant is entitled to the effective assistance of counsel as required by the Sixth and Fourteenth Amendments, as well as article 1, section 10 of the Texas Constitution. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Effective assistance is denied if, "counsel's representation fell below an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668 (1984).

To establish deficient performance, Hamer must show that his counsel's representation "fell below an objective standard of reasonableness." *Jones v. Jones,* 163 F.3d 285, 301 (5th Cir. 1998) (quoting *Strickland,* 466 U.S. at 688). The court applies a highly deferential standard to the examination of counsel's performance,

making every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *See Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997). To satisfy the prejudice requirement, the record must demonstrate that, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id. See also Nealy v. Cabana*, 764 F.2d 1173, 1178 (5th Cir. 1985). That is, "a criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687). This in not an outcome-determinative test. *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). The question is not whether a defendant would have more likely than not received a different verdict but for counsel's performance, but whether, "he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 454, 115 S.Ct. 419, 131 L.Ed. 2d 490 (1995).[1]

---

[1]Although *Kyles* involves the determination of prejudice following the State's suppression of evidence favorable to the defense (*Brady* error) (*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963)) the standard for prejudice employed in such cases is adopted from, and is identical to, that in *Strickland. United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed. 2d 481 (1985). In both circumstances, to demonstrate prejudice, a petitioner must show that "there is a reasonable probability that . . . the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433-434 (quoting *Bagley*, 473 U.S. at 682).

It has been held that, even if an attorney's manner of conducting a trial was trial strategy, it can be so ill-chosen as to render a trial fundamentally unfair. *United States v. Rusmisel*, 716 F.2d 301, 310 (5th Cir. 1983). In *Baldwin v. State*, 668 S.W.2d 762, 764 (Tex. App. - Houston [14th Dist.] 1984, no pet.), the court found ineffective assistance of counsel when the attorney permitted the eliciting of inadmissible and incriminating hearsay. The court in *Lyons v. McCotter*, 770 F.2d 529 (5th Cir. 1985), held that passing over admission of prejudicial and arguably inadmissible evidence may be a strategic decision by trial counsel, while passing over admission of prejudicial and clearly inadmissible evidence has no strategic value and may constitute ineffective assistance. Also, in *Strickland v. State*, 747 S.W.2d 59, 60-61 (Tex. App. - Texarkana 1988, no pet.), the court found ineffective assistance for counsel's failure to object to four inadmissible extraneous offenses. *See also Mares v. State*, 52 S.W.3d 886 (Tex. App. - San Antonio, pet. ref'd) (holding failure to make objection cannot be considered reasonable trial strategy); *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999); *Proffitt v. Waldron*, 831 F.2d 1245, 1248 (5th Cir. 1987) (holding tactical decisions that give no advantage to a defendant are not reasonable and court will not engage in presumption of reasonableness under these circumstances).

A single error of counsel may support a claim of ineffective assistance if the error was of such magnitude that it rendered the trial fundamentally unfair. *See*

*Nelson v. Estelle*, 642 F.2d 903, 907 (5th Cir. 1981); *Tress v. Maggio*, 731 F.2d 288, 292-94 (5th Cir. 1984) (failure to seek severance); *Summit v. Blackburn*, 795 F.2d 1237, 1244-45 (5th Cir. 1986) (failure to object to proving corpus delecti solely by defendant's confession); *Cooke v. State*, 735 S.W.2d 928, 930 (Tex. App. - Houston [14th Dist.] 1987, pet. ref'd) (failure to object to tainted identification after illegal arrest and to proffer of bolstering testimony when entire strategy was mistaken identity); *Sanders v. State*, 715 S.W.2d 771, 776 (Tex. App. - Tyler 1986, no pet.) (failure to raise involuntariness of confession).

Although *Strickland* requires a showing of prejudice, it does not require the defendant to show that his counsel's deficient performance, *more likely than not*, altered the outcome of the case. *Strickland*, 466 U.S. at 693. The result at trial "can be rendered unreliable, and hence the proceeding itself unfair, even if the error of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* at 694. Thus, the *Strickland* requirement that a defendant must show a "reasonable probability" that the outcome of trial would have been different absent error of counsel does not mean that Applicant must show a better than 50-50 chance. *Strickland* merely imparts the idea that "showing some conceivable effect on the outcome of the proceeding" would not suffice to overturn a conviction. 466 U.S. at 693. Instead, according to *Strickland*, a "reasonable probability" means a reasonable chance that counsel's mistake could have affected the outcome of the case,

based upon concrete and identifiable facts and circumstances reflected in the record.

The *Strickland* standard also applies when analyzing ineffective assistance of counsel regarding a plea of guilty. *Hill v. Lockhart*, 474 U.S. 52 (1985); *Jackson v. State*, 139 S.W.3d 7 (Tex. App. - Fort Worth 2004).

In the case at bar, Hamer's trial counsel failed to fully investigate the facts of this case and properly research the law. If she had done so, she would have determined that the proper offense to charge Hamer with was criminally negligent homicide.

Based on these errors of counsel, ineffective assistance of counsel under *Strickland* is established. Counsel failed to properly investigate this case and failed to properly advise Hamer before he entered his guilty plea.

### Ground for Relief Two

Hamer's guilty plea was not voluntary.

### Argument

In the case at bar, Hamer entered a guilty plea without knowing what the State was required to prove and without knowing that the evidence in fact showed that he was guilty only of the lesser offense of criminally negligent homicide. He was clearly not aware of the full circumstances concerning the law and facts of this case and therefore his plea should be set aside. Hamer would not have entered the plea in this case had he been fully aware of all of the facts, law and circumstances.

A guilty plea must be voluntarily and knowingly entered in order to be valid. When a court entertains a plea agreement, it must assure itself that the plea is entered voluntarily and knowingly. A defendant is required to be informed of all of the direct consequences of the plea. *See Fielder v. State*, 834 S.W.2d 509 (Tex. App. - Ft. Worth 1992); *Ex parte Chandler*, 684 S.W.2d 700 (Tex. Crim. App. 1985).

In *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463 (1970), the Court stated the following:

> "That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so--hence the minimum requirement that his plea be the voluntary expression of his own choice. But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial--a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."

In the case at bar, Hamer was not aware of the full consequences of his plea and the fact that, if he was guilty, it was only a lesser offense. Thus, his plea was involuntary.

## VI.

### Request For An Evidentiary Hearing

In order that the issues raised be fully examined and accurately resolved, Hamer requests that the court set this matter for an evidentiary hearing.

Respectfully submitted,

_(signature)_

GARY A. UDASHEN
Bar Card No. 20369590

SORRELS UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
214/468-8100
214/468-8104 fax

Attorney for Applicant

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of _____, 2015, a true and correct copy of the above and foregoing Memorandum in Support of Application for a Writ of Habeas Corpus was delivered to the Harris County District Attorney's Office, 1201 Franklin Street, Suite 600, Houston, Texas 77002.

_(signature)_

GARY A. UDASHEN

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 73.1, undersigned counsel certifies that this memorandum complies with:

1.    the type-volume limitation of TEX. R. APP. P. 73.1(d) because this memorandum contains 3,591 words.

2.    the typeface requirements of TEX. R. APP. P. 73.1(e) because this memorandum has been prepared in a conventional typeface using WordPerfect X5 in 14-point Times New Roman.

GARY A. UDASHEN