TERRI F. LOVE, Judge.
11 This appeal arises from the conviction and sentencing of the defendant for second degree murder. The defendant alleged that insufficient evidence was presented to support his conviction. He also asserted that the trial court erroneously admitted unauthenticated statements and alleged hearsay. Following the defendant’s conviction by the jury, the defendant claimed that the trial court abused its discretion in denying his motion for new trial.
We find that sufficient evidence was presented for the jury to find that the defendant murdered the victim beyond a reasonable doubt. Additionally, the recorded statements admitted by the trial court were sufficiently authenticated by the accompanying testimony. The trial court also did nor err in admitting the alleged hearsay statements, as the statements were cumulative in nature and therefore harmless. Lastly, the trial court did not abuse its discretion in denying the defendant’s motion for new trial. Therefore, we affirm the defendant?s conviction and sentence.

PROCEDURAL HISTORY

Kenneth Martin was indicted for the second degree murder of Jerome Perkins and pled not guilty. The trial court denied Mr. Martin’s Motions to Suppress Statement and Identification. Following a jury trial, Mr. Martin was |2found guilty as *124 charged. Mr. Martin was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Mr. Martin?s Motions for New Trial and Reconsideration of Sentence were denied by the trial court. Mr. Martin’s appeal follows.
Mr. Martin contends that insufficient evidence was presented to support his conviction, that the trial court erroneously admitted unauthenticated statements and hearsay, and abused its discretion in denying his Motion for New Trial.

Hattie Perkins

Hattie Perkins, Mr. Perkins’ mother, testified that her son, died on December 6, 2009. Ms. Perkins identified a photograph of Mr. Perkins and her family. She testified that she knew Mr. Martin, and identified him at trial. Ms. Perkins viewed Mr. Martin across from her house the day her son was shot. Mr. Martin was sitting in a car, staring at her. Mr. Martin wore dreadlocks.

Erin Stewart

Erin Stewart, a technician with the New Orleans Police Department (“NOPD”) Crime Lab, took photographs of the crime scene and collected evidence from the scene, including two red and white plastic dice stained with blood and three spent casings.

Dr. Paul McGarry

Dr. Paul McGarry, a forensic pathologist with the Orleans Parish Coroner?s Office, performed an autopsy on Mr. Perkins. Dr. McGarry testified that Mr. Perkins suffered three gunshot wounds to the head.

Terry Martin

Terry Martin (“Terry”), Mr. Martin’s uncle, knew Mr. Perkins, whose nickname was “Lucky.” Terry and Mr. Perkins were playing dice on General | ¡¡Meyer Avenue, near a barber shop. While they were playing dice, Terry heard gunshots and fled. Terry did not witness what happened after he fled. He did not remember seeing a gun or someone’s hand. Terry spoke with members of the NOPD a couple of days later, including Detective Michael McCleery. Terry did not remember his conversation with the NOPD. On direct examination by the State, Terry was presented with his statement to the NOPD; however, he stated that it did not refresh his memory. Terry did not recall informing the NOPD that he saw a hand coming around the side of the building immediately prior to the shooting. Terry allegedly only remembered being asked if he could identify Mr. Martin, to which he responded affirmatively. Terry did not recall telling Detective McCleery that he called the Fourth District nor speaking with Officer Aaron Crunk. Terry recalled identifying Mr. Martin in a photographic lineup. However, Terry did not recall informing the NOPD officers that Mr. Martin told him why he killed Mr. Perkins two days after the shooting. Terry did not see Mr. Perkins get shot.
Mr. Perkins attempted to run, but slipped. Terry admitted that Mr. Perkins did not have a gun. Terry heard that Mr. Perkins had altercations with other people in the neighborhood. Terry acknowledged that there had been a “suggestion” in the neighborhood that he set up Mr. Perkins and went through his pockets after the shooting. Terry denied any involvement and stated that he did not go through Mr. Perkins’ pockets.

Detective Aaron Crunk

NOPD Detective Crunk received a telephone call about the shooting from a person who called himself “Mike.” Detective Crunk gave the information to Detective McCleery.
*125 | ¿Detective Michael McCleery
NOPD homicide Detective McCleery conducted the investigation of Mr. Perkins’ homicide. Detective McCleery received information from Detective Crunk regarding a telephone call from a person named “Mike,” later determined to be Terry. Detective McCleery brought Terry in for questioning and obtained a statement. Terry was presented with a photographic lineup, and identified Mr. Martin as the person who shot Mr. Perkins. Detective McCleery recorded a statement from Terry. At trial, Detective McCleery identified his voice on the recorded statement, which was played for the jury. Detective McCleery stated that no threats or coercion were used to obtain Terry’s statement.
Detective McCleery obtained an arrest warrant for Mr. Martin and Mr. Martin was arrested in Houston, Texas by a United States Marshall several months later. Detective McCleery interviewed Amanda Washington, who gave a recorded statement and identified Mr. Martin in a photographic lineup. Detective McCleery spoke with Keith Mack. Mr. Mack provided him with a recorded conversation between Mr. Mack and Mr. Martin wherein Mr. Martin discussed the shooting.

Amanda Washington

Ms. Washington knew Mr. Martin, and she identified him at trial. She was going to the grocery store when she heard gunshots. She then witnessed Mr. Martin running to his car with a gun in his hand. Ms. Washington asked Mr. Martin to let her pass because she thought he might shoot her. Mr. Martin let her pass, but she watched as she walked away. Mr. Martin placed the gun in a car?s trunk and drove away. Ms. Washington saw Mr. Martin later that night at a friend’s house on Sullen Street, but Mr. Martin did not speak to her. Ms. Washington also saw Mr. Martin speaking with his uncle, Terry. She did not see | sMr. Martin after that evening until about one month before trial when he asked her if she planned on testifying.
Ms. Washington informed Mr. Martin that she was not going to testify. Ms. Washington stated that she told Terry what she saw the day of the shooting. She acknowledged that she signed an affidavit for the defense, stating that she did not see Mr. Martin involved in the shooting of Mr. Perkins. However, she did not recall the document stating that she did not view Mr. Martin with a gun.

Keith Mack

Mr. Mack[1] and Mr. Martin attended high school together. Mr. Mack last saw Mr. Martin prior to Hurricane Katrina. Mr. Mack decided to call Mr. Martin when he viewed Mr. Martin’s photograph on a Crimestoppers advertising board. Mr. Mack telephoned Mr. Martin and recorded the conversation. Mr. Mack admitted that hé placed the telephone call to get the Crimestoppers reward, but stated that he did not get the reward because he subsequently went to prison. Mr. Mack gave the recorded conversation to a friend who turned it over to the NOPD allegedly because a couple of his friends’ murders were never solved.
Mr. Mack identified his and Mr. Martin’s voices on the CD, which was played for the jury. Mr. Mack also recorded another conversation with Mr. Martin when Mr. Martin telephoned him. Mr. Mack stated that Mr. Martin sounded ner *126 vous and Mr. Martin said that he was going to turn himself in to the NOPD. Mr. Martin told Mr. Mack that the NOPD had no evidence to connect him to the crime and that “Lucky” deserved to be killed.
| ^ERRORS PATENT
Mr. Martin was sentenced on the same date the trial court denied his Motion for New Trial. The hearing transcript denotes that when the parties appeared for sentencing, defense counsel informed the trial court that he was filing a Motion for New Trial. The trial court denied the Motion for New Trial and then sentenced Mr. Martin, after the victim impact statements. Mr. Martin did not specifically waive his right to the delays provided in La.C.Cr.P. article 873, but when the trial court asked defense counsel if he had anything to be considered prior to sentencing, defense counsel responded in the negative.
La.C.Cr.P. art. 873 provides that: [i]f a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
“A defendant may implicitly waive the waiting period for imposing sentence by announcing his readiness for the sentencing hearing.” State v. Pierre, 99-3156, p. 7 (La.App. 4 Cir. 7/25/01), 792 So.2d 899, 903. In State v. Robichaux, 00-1234, p. 7 (La.App. 4 Cir. 3/14/01), 788 So.2d 458, 465, this Court held that “by virtue of the defense counsel’s statement, defendant announced his readiness for sentencing, which implicitly waived the waiting period.” Also, in State v. Cavazos, 11-0733, p. 8 (La.App. 4 Cir. 5/16/12), 94 So.3d 870, 878, this Court held that the defendant implicitly waived his right to the delay under La.C.Cr.P. art. 873 when the trial court asked defense counsel if had anything to say before sentencing, and defense counsel responded that there was nothing to put on the 17record.
In the case sub judice, defense counsel’s filing of a Motion for New Trial at the beginning of the sentencing hearing and his statement that he had nothing for the trial court to consider prior to sentencing implicitly waived the twenty-four hour delay required pursuant to La.C.Cr.P. art. 873. The failure to observe the twenty-four hour delay also constitutes harmless error because Mr. Martin has not challenged his sentence on appeal. Where a defendant does not challenge his sentence on appeal or raise the failure to observe the twenty-four hour delay as error, any error is harmless. State v. Celestine, 00-2713, p. 5 (La.App. 4 Cir. 2/13/02), 811 So.2d 44, 47.

SUFFICIENCY OF THE EVIDENCE

Mr. Martin asserts that the jury’s verdict, finding him guilty of second degree murder, is contrary to the law and evidence presented. Mr. Martin contends that the State failed to prove that he killed Mr. Perkins.[2]
In State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the Court set forth the standard for examining a claim of insufficiency of evidence:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 *127 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 00-0674, (La.6/29/01) 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that | ¡/‘assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Neal, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere, 488 So.2d 965, 968 (La.1986)).
In the case sub judice, Mr. Martin was identified as the perpetrator by statements he made to Terry and Mr. Mack. Ms. Washington also testified that she viewed Mr. Martin in the area immediately after the shooting. She stated that Mr. Martin ran and placed a gun in the trunk of a car before driving away. Terry testified that Mr. Martin told him that Mr. Martin killed Mr. Perkins because Mr. Perkins harassed and threatened him. Mr. Martin implicated himself in his conversations with Mr. Mack, stating that the NOPD possessed no evidence on him and that Mr. Perkins deserved to be killed. Accordingly, the testimony was sufficient for the jury to conclude, beyond a reasonable doubt, that Mr. Martin was the person who shot and killed Mr. Perkins.

STATEMENTS ADMITTED INTO EVIDENCE

Mr. Martin contends that the trial court erred when it allowed the State to introduce Terry’s statement and the recorded conversations between Mr. Mack and Mr. Martin into evidence because the statement and conversations were allegedly not properly authenticated.
The record indicates that Mr. Martin did not object to the admission of Terry’s statement. The defense counsel objected to an alleged hearsay statement within the recorded statement. There was no objection to the authentication of the statement.
La.C.Cr.P. article 841(A) provides that: [a]n irregularity or error cannot be availed of after verdict |9unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. La.C.Cr.P. art. 841(A). See also State v. Seals, 95-0305, p. 5 (La.11/25/96), 684 So.2d 368, 373. Not only does an objection have to be made, but La.C.Cr.P. art. 841(A) “requires a defendant to make known the grounds for his objection; and, he is limited on appeal to those grounds articulated at trial....” State v. Buffington, 97-2423, p. 9 (La.App. 4 Cir. 2/17/99), 731 So.2d 340, 346, quoting State v. Chisolm, 95-2028, p. 6 (La.App. 4 Cir. 3/12/97), 691 So.2d 251, 255. Thus, this issue was not preserved for appeal because defense counsel failed to object at trial.
 However, Mr. Martin objected to the admission of the recorded statements between Mr. Mack and himself based upon the alleged lack of authentication. Authentication is required as a condition precedent to admissibility. La. C.E. art. 901(A). “One method of authenticating *128 documents is through the testimony of a witness with knowledge of what the document is, where it comes from, and how it is kept.” State v. Amato, 96-0606, p. 17 (La.App. 1 Cir. 6/30/97), 698 So.2d 972, 986. La. C.E. art. 901(B)(10) provides for “[a]ny method of authentication or identification provided by Act of Congress or by Act of the Louisiana Legislature.”
“To admit demonstrative evidence at trial, the law requires that the object be identified.” State v. Sweeney, 443 So.2d 522, 528 (La.1983). “The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case,” or “by chain of custody, that is, by establishing the custody of Imthe object from the time it was seized to the time it was offered in evidence.” Id. “The law does not require that the evidence as to custody eliminate all possibility that the object has been altered.” State v. Merrill, 94-0716, p. 9 (La.App. 4 Cir. 1/31/95), 650 So.2d 793, 799. “For admission, it suffices that it is more probable than not that the object is the one connected to the case.” Id.
Mr. Mack testified that he recorded the conversations with Mr. Martin. He initially called Mr. Martin, and Mr. Martin later called him. Mr. Mack identified his and Mr. Martin’s voices on the CD. Mr. Mack further stated that the CD was then sent to the NOPD. Detective McCleery testified that he spoke with Mr. Mack, who provided him with the recorded conversations. This testimony was sufficient to authenticate the recorded conversations.

ALLEGED HEARSAY EVIDENCE

Mr. Martin avers that the trial court erred in admitting alleged hearsay evidence contained within Terry’s statement that he heard that Mr. Martin killed Mr. Perkins.
“ ‘Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 801. La. C.E. art. 802 provides that “[hjearsay is not admissible except as otherwise provided by this Code or other legislation.” “Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability.” State v. Everidge, 96-2665, p. 7 (La.12/2/97), 702 So.2d 680, 685.
“[E]vidence is not hearsay, and thus admissible, if it is introduced to show that the utterance occurred or that the conversation took place rather than to show In the truth of the matter asserted.” State v. Schexnayder, 96-98, p. 16 (La.App. 5 Cir. 11/26/96), 685 So.2d 357, 367. Moreover, “[inadmissible hearsay which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless.” State v. Winfrey, 97-427, p. 27 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 78.
“Harmless error does indeed have a place in appellate review of criminal convictions” and it “should be applied to inconsequential trial errors.” State v. Johnson, 94-1379, p. 1 (La.12/18/95), 665 So.2d 1163, 1163. “The test for determining harmless error is whether the guilty verdict actually rendered in this trial was surely unattributable to the error.’ ” State v. Hugle, 11-1121, p. 19 (La.App. 4 Cir. 11/7/12), 104 So.3d 598, 613, quoting Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
Mr. Martin references two portions of Terr/s statement wherein he states that later on in the day of the shooting, Terry learned that Mr. Martin was the person who shot Mr. Perkins. However, Terry further stated that two days later, he spoke with Mr. Martin, who told Terry that he shot Mr. Perkins because he and Mr. Perkins had altercations and Mr. Per *129 kins was threatening him. These two statements are cumulative and harmless in light of the statements Mr. Martin made to Terry and Mr. Mack. Additionally, Mr. Martin’s other statements to Mr. Mack and the testimony of Ms. Washington placing Mr. Martin near the scene at the time of the shooting were sufficient for the jury to determine that Mr. Martin killed Mr. Perkins.

MOTION FOR NEW TRIAL

Mr. Martin also asserts that the trial court erred in denying his Motion for New Trial because the jury’s verdict was not supported by the law and the 1 ^evidence.
“The decision on a motion for new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion.” State v. Quimby, 419 So.2d 951, 960 (La.1982). “The merits of such a motion must be viewed with extreme caution in the interest of preserving the finality of judgments.” Celestine, 00-2718, p. 8, 811 So.2d at 49. “As a general rule, a motion for new trial will be denied unless injustice has been done.” Id. “An assignment of error based on the refusal of the trial court to grant a new trial on grounds that the verdict was contrary to the law and evidence presents nothing for appellate review.” State v. Gray, 351 So.2d 448, 461 (La.1977). However, in State v. Guillory, 10-1231, pp. 3-4 (La.10/8/10), 45 So.3d 612, 615, the Supreme Court determined that a grant or denial of a motion for new trial pursuant to La.C.Cr.P. article 851(5) presents a question of law that is subject to appellate review and is reviewed for abuse of discretion.
In State v. Collins, 10-1181, pp. 11-12 (La.App. 4 Cir. 3/23/11), 62 So.3d 268, 275, this Court noted that it was “unclear whether Guillory is limited to motions filed pursuant to La.Code Crim. Proc. art. 851(5) or whether it is applicable to ... motions filed pursuant to La.Code Crim. Proc. art. 851(1).” This Court, which was considering a motion for new trial based upon La. C.Cr.P. article 851(1), wherein the verdict is allegedly contrary to the law and evidence, reviewed the evidence and concluded that the evidence supported the verdict. Collins, 10-1181, p. 12, 62 So.3d at 275. The Court stated that “even accepting arguendo that Guillory is applicable to the denial of a motion filed pursuant to La.Code Crim. Proc. art. 851(1), the trial court clearly did not abuse its discretion in denying the motion.” Id.
113“In order to obtain a conviction, the State must prove the elements of the crime charged beyond a reasonable doubt.” Collins, 10-1181, p. 3, 62 So.3d at 271. “[S]econd degree murder, defined in pertinent part by La.Rev.Stat. 14:30.1,” is “the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm, or when the offender is engaged in the perpetration or attempted perpetration of, among other felonies, armed robbery or simple robbery.” Id.
The evidence was sufficient for the jury to find, beyond a reasonable doubt, that Mr. Martin shot and killed Mr. Perkins. Dr. McGarry testified that Mr. Perkins suffered three gunshot wounds to the head. The gunshot wounds to the head provided sufficient evidence that Mr. Martin intended to inflict great bodily harm. Thus, the State produced sufficient evidence, beyond a reasonable doubt, for the jury to find that Mr. Martin was guilty of second degree murder. Therefore, the trial court did not abuse its discretion when it denied the Motion for New Trial.

DECREE

For the above-mentioned reasons, we find that sufficient evidence was presented *130 for the jury to find that Mr. Martin killed Mr. Perkins beyond a reasonable doubt. Additionally, the recorded statements admitted by the trial court were sufficiently authenticated by the accompanying testimony. The trial court did not err in admitting the alleged hearsay statements of Terry, as the statements were cumulative in nature and therefore harmless. Lastly, the trial court did not abuse its discretion in denying Mr. Martin’s Motion for New Trial. Therefore, we affirm Mr. Martin’s conviction and sentence.
AFFIRMED.

. Mr. Mack is presently serving time in a federal penitentiary for possession of cocaine and possession of firearms.

. "When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, we first determine the sufficiency of the evidence.” State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55.