STATE OF LOUISIANA IN     *       NO. 2022-CA-0324
THE INTEREST OF J.H.

                      *

                      COURT OF APPEAL

                      *

                      FOURTH CIRCUIT

                      *

                      STATE OF LOUISIANA

              * * * * * * *

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2022-014-06-DQ-C, SECTION "C"
Honorable Candice Bates Anderson, Judge
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase)


Jason R. Williams
DISTRICT ATTORNEY
Brad Scott
Assistant District Attorney, Appeals Division
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, Louisiana 70119

      COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Katherine M. Franks
LOUISIANA APPELLATE PROJECT
P.O. Box 220
Madisonville, LA 70447

      COUNSEL FOR DEFENDANT/APPELLANT


                                      **REVERSED**

**AUGUST 9, 2022**

*SCJ*
*TFL*
*TGC*

The juvenile, J.H., appeals the delinquency adjudication for one misdemeanor count of illegal possession of a handgun by a juvenile, in violation of La. R.S. 14:98.5, and the disposition of six months in custody imposed by the trial court. J.H.'s appeal was lodged in this Court on May 13, 2022. Prior to the submission of this appeal to the Court, on August 4, 2022, J.H.'s six-month disposition was completed. In light of Louisiana jurisprudence, holding that the satisfaction of a sentence renders a criminal appeal moot due to the lack of practical relief or effect of appellate review, this Court ordered the parties to show cause why the appeal should not be dismissed as moot. *See State v. Malone*, 08-2253 (La. 12/1/09), 25 So.3d 113. In consideration of the parties' responses and further review of applicable jurisprudence, this Court maintains the appeal and, after review of the merits, we reverse the trial court's adjudication of J.H. as delinquent for violation of illegal possession of a handgun.

1

**FACTS**

At the adjudication hearing, Detective Amit Bidichandani of the New Orleans Police Department ("NOPD") testified that he participated in the arrest of J.H. On January 4, 2022, Det. Bidichandani responded to a 911 call, received at approximately 4:30 p.m., reporting an aggravated assault with a firearm at the corner of Reverend John Raphael Jr. Way and Erato Street, which is in the area of the Melpomene Housing Development. Det. Bidichandani responded to the address of the 911 caller and spoke with three complaining witnesses.[1] In speaking with the witnesses, Det. Bidichandani learned that one witness recognized the person who brandished the gun, identified that person by first name as well as by the nickname "J4", informed Det. Bidichandani of the person's approximate address, and showed Det. Bidichandani pictures of the person from an Instagram page.

Based on the witness account, Det. Bidichandani obtained video surveillance footage from the director of the Melpomene Housing Development, Mr. Pollard. Det. Bidichandani stated that, from his previous experience working in that area, he knew that the Melpomene Housing Development had surveillance cameras recording video in the area where the incident occurred. Det. Bidichandani obtained from Mr. Pollard a video recording from the date, location, and approximate time of the reported incident. In the video, Det. Bidichandani viewed

---

[1] None of the witnesses that Det. Bidichandani spoke with testified in this case.

a person, who fit the description from the witnesses, pulling a firearm from his waistband.

After reviewing the video, Det. Bidichandani obtained an arrest warrant for J.H., who was subsequently located at his aunt's residence. Det. Bidichandani then obtained a search warrant for the aunt's residence and participated in the search. He stated that three firearms were seized, including an "AR-style pistol" that was "consistent in appearance with the firearm" observed on the surveillance video. In addition to the firearms, the officers seized gun magazines and several pair of camouflage pants, consistent with what the person in the video was wearing.

Det. Bidichandani then identified J.H. in court as the person he arrested in connection with his investigation, based upon the witness account and the surveillance video. Det. Bidichandani testified that he had not had any interaction or knowledge of J.H. prior to this case.

### PROCEDURAL BACKGROUND

On January 12, 2022, J.H. was arrested and charged with three felony counts of aggravated assault with a firearm and one misdemeanor count of illegal possession of a handgun by a juvenile.[2] Upon arrest, J.H. was held in custody at the Juvenile Justice Intervention Center ("JJIC"). On January 14, 2022, the trial court found probable cause for J.H.'s arrest and continued custody and set bail at $50,000.

---

[2] At the time of the offense and arrest, J.H. was sixteen years old.

3

On March 15, 2022, the date set for adjudication, the State nolle prosequed the three felony counts of aggravated assault with a firearm, due to the State's inability to contact and secure the presence of the witnesses/victims. The trial court then proceeded with the adjudication hearing on the misdemeanor count of illegal possession of a handgun by a juvenile. At the conclusion of the hearing, the trial court adjudicated J.H. delinquent and ordered the Office of Juvenile Justice ("OJJ") to conduct a pre-disposition investigation.

At the disposition hearing on April 11, 2022, the trial court heard testimony from the OJJ representative who prepared the pre-disposition report and recommended a disposition that included custodial detention. The trial court noted J.H.'s five prior delinquency adjudications, since 2019, and unsuccessful adjustment while previously under probation supervision. The trial court imposed a disposition of six months in the custody of OJJ, with credit for the time served in custody since J.H.'s arrest on January 12, 2022.

On April 20, 2022, J.H. timely filed notice of appeal of the adjudication and disposition. After the record was lodged in this Court on May 13, 2022, a briefing schedule was issued. J.H. moved for and was granted a one-week extension of time to file the appellate brief. All briefs were timely filed by June 21, 2022. This expedited appeal was submitted on August 4, 2022.[3]

---

[3] *See* Rules 5-1, 5-3 of the Uniform Rules—Courts of Appeal (governing the expedited handling and procedures for appeals in certain cases involving minors).

## JURISDICTIONAL ISSUE

On July 26, 2022, this Court issued an order for the parties to show cause why the appeal should not be dismissed as moot, in consideration that J.H.'s term of disposition ended on July 12, 2022, and in light of *State v. Malone*, *supra*.

In *Malone*, the Louisiana Supreme Court discussed the general rule of mootness of a criminal appeal, stating as follows:

> A case is "moot" when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. If the case is moot, there is no subject matter on which the judgment of the court can operate.
>
> There are three general rules which have developed when courts have considered whether a criminal case is moot so as to preclude review due to satisfaction of the sentence: (A) the traditional rule, (B) the liberal rule, and (C) the federal rule. The traditional rule provides that the satisfaction of the sentence renders the case moot so as to preclude review; the liberal rule provides that an accused's interest in clearing his name permits review even after the sentence has been satisfied; and the federal rule provides that satisfaction of a sentence renders the case moot unless, as a result of the conviction, the defendant suffers collateral consequences. The traditional rule is generally premised on a court's lack of jurisdiction to hear moot cases, the courts' reluctance to issue advisory opinions, the need to end litigation, and the assumption that an accused who satisfies his sentence accepts it. The liberal rule is based on the interest of the accused in clearing his name. And, the federal rule represents a compromise between the harsher traditional rule and the far-reaching liberal rule. The federal rule generally allows a review of a conviction where there are serious collateral consequences, such as where the conviction is used to increase the sentence for a subsequent crime, where the defendant's parole has been revoked from an earlier sentence due to the conviction, where the defendant has suffered a loss of his civil rights, or has been deprived of certain privileges.

*Malone*, 08-2253, pp. 2-3, 25 So.3d at 116 (internal citations omitted).

While acknowledging Louisiana's long-standing jurisprudence following the traditional rule, the Court also noted that,

5

> While some courts have continued to follow the traditional rule, especially in cases involving misdemeanor convictions, there has been some shift of momentum in later cases towards the so-called federal rule, and occasionally the liberal rule. These cases have primarily declined to declare a case moot where the defendant shows that prejudicial collateral consequences would occur.

*Malone*, 08-2253, p. 5, 25 So.3d at 117-18.

In this case, the State argues that under the traditional rule followed in *Malone*, J.H.'s appeal is moot because the six-month disposition has been satisfied. And, even under the federal rule, the State argues the appeal is moot, because J.H. cannot show any serious collateral consequences, since juvenile adjudications are sealed and cannot be used to enhance future sentences.

Conversely, defense counsel argues there are potential collateral consequences for J.H., who is not yet seventeen years old. If J.H. is arrested and charged with another handgun offense, under La. R.S. 14:95.8, J.H. could face up to five years imprisonment.[4]  In addition, defense counsel argues that the dismissal of J.H.'s appeal as moot would effectively deny J.H. of the constitutionally

---

[4] La. R.S. 14:95.8(B) provides as follows:

(1) On a first conviction, the offender shall be fined not more than one hundred dollars and imprisoned for not less than ninety days and not more than six months.
(2) On a second conviction, the offender shall be fined not more than five hundred dollars and imprisoned with or without hard labor for not more than two years.
(3) On a third or subsequent conviction, the offender shall be fined not more than one thousand dollars and imprisoned at hard labor for not more than five years.
(4) A juvenile adjudicated delinquent under this Section, having been previously found guilty or adjudicated delinquent for any crime of violence as defined by R.S. 14:2(B), or attempt or conspiracy to commit any such offense, shall upon a first or subsequent conviction be fined not less than five hundred dollars and not more than one thousand dollars and shall be imprisoned with or without hard labor for not less than six months and no more than five years. At least ninety days shall be served without benefit of probation, parole, or suspension of sentence.

Defense counsel states that J.H. has a prior adjudication for a handgun offense in the 34th Judicial District Court.

6

guaranteed right to an appeal[5] and, potentially, have a chilling effect on the exercise of the right to appeal in other juvenile cases in which the dispositions imposed are satisfied before an appeal can be completed.

In consideration of the constitutional and statutory right of appeal guaranteed to juveniles, pursuant to La. Const. Art. I, §19 and La. Ch. C. art. 331,[6] and the potential for J.H. to face collateral consequences,[7] this Court maintains J.H.'s appeal and now reviews the assignments of error.

## DISCUSSION

J.H. asserts three assignments of error in this appeal:

1. The evidence presented at trial was insufficient to establish J.H.'s illegal possession of a handgun beyond a reasonable doubt.

2. The trial court erred in admitting surveillance video evidence that was not properly authenticated.

---

[5] La. Const. Art. I, §19 provides that,

> No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived. The cost of transcribing the record shall be paid as provided by law.

[6] La. Ch. C. art. 331 provides, in pertinent part, that a juvenile "shall have the right to appeal".

[7] In 2017, the Louisiana Legislature enacted several juvenile justice reforms, including provisions to provide for the confidentiality and expungement of juvenile records. Discussing the purpose of such reforms, Professor Hector Linares noted the following,

> Given the rehabilitative purpose of juvenile court, many assume delinquency records are confidential in a manner that prevents them from following children into adulthood and serving as obstacles to leading a productive life. The truth is, however, records of juvenile arrests or adjudications can come to light in a number of ways, creating collateral consequences that hamper the ability to move on with one's life. Even once a case is long over, a juvenile record can still negatively affect the ability to access higher education, job opportunities with both private and public employers, government benefits like housing assistance, and other opportunities like admission to the Bar.

Hector A. Linares III, "Expungement Reform Helps Those with Juvenile Records", 66 La. B.J. 100, p. 101 (Aug/Sept. 2018).

3. The trial court erred in overruling hearsay objections regarding critical issues of fact, in violation of J.H.'s constitutional rights of confrontation of witnesses and to a fair trial.

Within our review of the sufficiency of the evidence, we also address the authentication of the video evidence and the hearsay objections raised by J.H. And, after viewing the evidence presented in the light most favorable to the prosecution, we conclude that the trial court clearly erred in finding that the State established all of the elements of the offense beyond a reasonable doubt.

*Sufficiency of Evidence*

When evaluating the sufficiency of the evidence in juvenile delinquency adjudications, the appellate court applies the same standard of review applicable to criminal cases that was first enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, the standard is whether, viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the juvenile committed the offense beyond a reasonable doubt. *State ex rel. T.C.*, 09-1669, p. 3 (La. App. 4 Cir. 2/16/11), 60 So.3d 1260, 1262 (citing *Jackson*, *supra*). The *Jackson* standard "specifically requires that the appellate court must determine that the evidence was sufficient to convince a rational trier of fact 'that all of the elements of the crime had been proved beyond a reasonable doubt.'" *State ex rel. C.N.*, 11-0074, p. 5 (La. App. 4 Cir. 6/29/11), 69 So.3d 711, 714.

In addition, appellate review of juvenile delinquency proceedings extends to both the law and facts. *State in the Interest of C.R.*, 19-0917, p. 6 (La. App. 4 Cir. 1/29/20), 290 So.3d 220, 223-24 (citing La. Const. art. V, §10(B)). "[A]s in the review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence

8

as a whole does not furnish a basis for it, or it is clearly wrong." *T.C.*, 09-1669, p. 3, 60 So.3d at 1262. "In sum, we apply the 'clearly wrong-manifest error' standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt." *Id.*

In this case, J.H. argues the evidence presented at trial was insufficient to establish J.H. possessed a handgun in violation of La. R.S. 14:95.8, which provides in pertinent part as follows:

A. It is unlawful for any person who has not attained the age of eighteen years knowingly to possess any handgun on his person. Any person possessing any handgun in violation of this Section commits the offense of illegal possession of a handgun by a juvenile.

\* \* \*

D. For the purposes of this Section "handgun" means a firearm as defined in R.S. 14:37.2,[8] provided however, that the barrel length shall not exceed twelve inches.

The language of the statute requires possession "on his person"; and, therefore, "only proof beyond a reasonable doubt of actual possession of a handgun on the person … can suffice for an adjudication of delinquency under §95.8 A." *State in the Interest of T.M.*, 11-1238, p. 9 (La. App. 4 Cir. 3/28/12), 88 So.3d 1228, 1234-35, *rev'd in part on other grounds*, 12-0964 (La. 12/14/12), 104 So.3d 418. Consequently, "[c]onstructive possession alone by the juvenile of a handgun is insufficient for a finding beyond a reasonable doubt that a juvenile unlawfully possessed a handgun." *Id.*, p. 9, 88 So.3d at 1235.

---

[8] The current provision of La. R.S. 14:37.2 does not include a definition of "firearm." By La. Acts 2016, No. 225, §1, La. R.S. 14:37.2 was amended from the offense of "Aggravated assault upon a peace officer with a firearm" and reenacted as "Aggravated assault upon a peace officer", removing the element that the offense be committed with a firearm, and deleting the definition of "firearm". The prior versions of the statute defined "firearm" as "an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it."

At trial, the State offered only the testimony of Det. Bidichandani, who investigated the initial complaint of an aggravated assault with a firearm. The witnesses with whom Det. Bidichandani spoke did not appear to testify at trial. According to Det. Bidichandani's testimony, he learned the identity of the suspect from the witnesses, but he had no prior knowledge of the named suspect. To corroborate the witnesses' statements, Det. Bidichandani obtained the video surveillance footage from the date, time, and location of the incident, and, on that video, he viewed a person matching the witnesses' description brandishing a firearm. Based on the statements and video, Det. Bidichandani obtained the arrest warrant for J.H. and a search warrant that resulted in the seizure of the "AR-style pistol" consistent with the firearm in the surveillance footage.

During the trial and in this appeal, defense objected to Det. Bidichandani's testimony multiple times on hearsay grounds and objected to the introduction of the video surveillance footage for lack of authentication. Considering that Det. Bidichandani's testimony and the video footage are the primary testimony and evidence against J.H., we can only determine the sufficiency of evidence to sustain this adjudication based on whether the trial court erred in overruling the objections to hearsay and authentication. We begin by discussing the authentication of the video, which was introduced at the beginning of Det. Bidichandani's testimony.

*Authentication of video evidence*

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the

matter in question is what its proponent claims." La. C.E. art 901(A); *State v. Rice*, 17-0446, p. 2 (La. 6/29/17), 222 So.3d 32, 33-34. "Such evidence may come in the form of testimony by a witness with knowledge that the matter is what it is asserted to be; indications of the item's distinctive characteristics, including its contents, …; or evidence describing the process or system used to produce the item and showing that the process or system produces an accurate result." *Rice*, 17-0446, pp. 2-3, 222 So.3d at 33 (citing La. C.E. arts. 901(B)(1), (4), and (9)). The identification of the evidence may also be satisfied "by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence." *State v. Martin*, 13-0115, pp. 9-10 (La. App. 4 Cir. 12/4/13), 131 So.3d 121, 128 (quoting *State v. Sweeney*, 443 So.2d 522, 528 (La. 1983)). Our rules of evidence do not require that the evidence as to custody eliminate all possibility that the object has been altered; for admission, it suffices that it is more probable than not the object is the one connected to the case. *Martin*, 13-0115, pp. 9-10, 131 So.3d at 128 (quoting *State v. Merrill*, 94-0716, p. 9 (La. App. 4 Cir. 1/31/95), 650 So.2d 793, 799).

In reviewing the trial court's determinations concerning the admissibility of evidence, the appellate court should not overturn such a ruling absent a clear abuse of discretion. *State v. Cosey*, 97-2020, p. 13 (La. 11/28/00), 779 So.2d 675, 684. "A trial court has great discretion in determining whether a sufficient foundation has been laid for the introduction of evidence." *State v. Ashford*, 03-1691, p. 14

11

(La. App. 4 Cir. 6/16/04), 878 So.2d 798, 806 (citing *State v. Lewis*, 97-2854, p. 31 (La. App. 4 Cir. 5/19/99), 736 So.2d 1004, 1022).

In this case, the defense argues that the State failed to lay the proper foundation for the admission of the video surveillance footage, because the State did not present testimony from someone at the Melpomene Housing Development, with knowledge of the video surveillance equipment, to describe the process or system used to record the footage and testify to the accuracy of that system. *See* La. C.E. art. 901(B)(9).

The defense relies on *State v. Rice*, *supra*, in which the Louisiana Supreme Court considered the trial court's ruling on the admissibility of video surveillance footage. In *Rice*, at a preliminary examination, the defense offered surveillance video taken from a home across the street from the alleged crime; to authenticate the video, the defense offered the testimony of the neighbor whose video surveillance system captured the video. The State objected to the authentication of the video, "asserting it was inadmissible because there was no custodian who could testify about the process by which the video was produced." *Rice*, 17-0446, p. 2, 222 So.3d at 33. The trial court sustained the objection, finding the defense had not laid the proper foundation for authentication of the video. But the Louisiana Supreme Court overturned the trial court's ruling, finding that the defense had laid a proper foundation, in accordance with La. C.E. art. 901(B)(9), because the neighbor testified that he had personally designed and managed the video surveillance system; he knew the video was what it asserted to be; and he

12

described the process and system by which the video was created and testified to the accuracy of that system. *Rice*, 17-0446, p. 3, 222 So.3d at 34.

Here, the State offered no testimony from a person who maintained the surveillance video system that recorded the video, to describe the process or system by which the video was created and to attest to the accuracy of the system. However, as argued by the State, Det. Bidichandani testified that he was familiar with the neighborhood of the Melpomene Housing Development, where the incident occurred; he knew to contact Mr. Pollard, the security director, about video surveillance; he retrieved the video footage from Mr. Pollard; and, from "previous experience collecting video footage from this area", he knew "that their camera systems and layout is accurate."

We find Det. Bidichandani's testimony fails to lay the proper foundation for authentication of this video evidence. Det. Bidichandani received a copy of an excerpt of a video recording from a third party who did not testify regarding the process or system by which the video was created. Thus, there was no testimony regarding the accuracy of the video. In addition, since Det. Bidichandani received this from a non-testifying third party, the chain of custody has not been properly established. Consequently, the trial court abused its discretion in admitting the video surveillance footage into evidence.

Improperly introduced demonstrative evidence will be considered harmless error if it is found to be cumulative or corroborative of other properly admitted evidence and did not contribute to the verdict. *State v. Falkins*, 12-1654, pp. 18-19

(La. App. 4 Cir. 7/23/14), 146 So.3d 838, 851. "The test for determining harmless error is 'whether the guilty verdict actually rendered in this trial was surely unattributable to the error.'" *State v. Hugle*, 11-1121, p. 19 (La. App. 4 Cir. 11/7/12), 104 So.3d 598, 613 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).

Based on our review of this record, we do not find the erroneous admission of the video evidence to be harmless. The video footage was the only evidence to establish J.H.'s actual possession of a handgun, because the State presented no eyewitness testimony of J.H.'s possession of a handgun. Moreover, as further discussed below, we also find the trial court erred in admitting hearsay testimony to establish J.H.'s identity as the suspect in the investigation.

*Hearsay*

Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the trial or hearing, that is offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(A)(1), (C). "Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability." *State v. Everidge*, 96-2665, p. 7 (La. 12/2/97), 702 So.2d 680, 685. "[E]vidence is not hearsay, and thus admissible, if it is introduced to show that the utterance occurred or that the conversation took place rather than to show the truth of the matter asserted." *State v. Martin*, 13-0115, pp. 10-11 (La. App. 4 Cir. 12/4/13), 131 So.3d

14

121, 128 (quoting *State v. Schexnayder*, 96-98, p. 16 (La. App. 5 Cir. 11/26/96), 685 So.2d 357, 367).

In regards to the testimony of an investigating officer, our Court has distinguished between hearsay and non-hearsay as follows:

> Where an investigating officer testifies concerning events leading to the arrest of a defendant, statements are not hearsay if offered merely to explain the officer's actions and not for the truth of the matter asserted. In other words, where the officer does not testify regarding the substance of what he was told, but with regard to what he did in response to that information, the testimony is not considered hearsay.

*State v. Jefferson*, 19-0522, p. 12 (La. App. 4 Cir. 7/22/20), 302 So.3d 567, 576 (internal citations omitted).

We now review the defendant's hearsay objections to Det. Bidichandani's testimony. When the State specifically asked how Det. Bidichandani was able to identify J.H. as the suspect, he responded, "[t]he 911 complainant, the victims of the aggravated assault had – one of them stated they recognized him." The defense objected, and the trial court overruled the objection. Det. Bidichandani then continued, stating, "the witnesses had stated they recognized him from the area, and they knew he went by the nickname J4. One of the witnesses also knew his first name was [J.]." The defense objected again, but Det. Bidichandani continued, explaining that one of the witnesses gave an address for J.H., and "they also produced his Instagram page and showed me pictures from his Instagram page." Defense counsel once again objected, stating "[p]lease note the Defense objection to the identification since it is completely based on hearsay testimony." After the

15

State concluded its questioning of Det. Bidichandani, the trial court directly questioned him regarding the identification of J.H., asking, "so have you had any opportunity to have any interaction with [J.H.] prior to this case?" Det. Bidichandani replied, "I have not", but testified that he used the information provided by the witnesses to research J.H., found a photo, and compared it to the Instagram picture the witnesses showed him, and found it to be the same person. The defense again objected and noted that the State did not offer or introduce any Instagram picture or elicit testimony regarding an identification using an Instagram picture. The trial court again overruled the hearsay objection.

After review of Det. Bidichandani's testimony, in light of the lack of any other corroborating testimony, we find the trial court erred in overruling the above-noted hearsay objections. Although Det. Bidichandani was testifying as to information he received in the course of his investigation, without the introduction of any corroborating testimony or evidence of J.H.'s identity, we find Det. Bidichandani's identification is based entirely on hearsay. The statements and information from the witnesses identifying J.H. were offered by Det. Bidichandani for the truth of the matter asserted. Det. Bidichandani relied entirely on the identifications by non-testifying witnesses; he did not have independent knowledge of the suspect; and he did not testify to verifying the identity of the suspect through an identification procedure with the witnesses.

Inadmissible hearsay evidence is also subject to harmless error review. *Martin*, 13-0115, p. 11, 131 So.3d at 128. Upon review, we conclude that the

16

inadmissible hearsay evidence directly contributed to J.H.'s adjudication. The State's case relied completely upon Det. Bidichandani's testimony. While Det. Bidichandani's testimony is credible and his investigative work is thorough, it must be corroborated by direct and admissible evidence. The State failed to present eyewitness testimony establishing how J.H. was developed as the suspect. And, with regard to the video evidence, the State failed to authenticate the only evidence showing a person in possession of a firearm.[9]

Based upon our review of this record, we find the trial court abused its discretion in admitting the video evidence and erred in overruling the defense objections to hearsay testimony. The erroneous admission of the evidence clearly contributed to the trial court's finding that J.H. illegally possessed a handgun, as there was no other corroborating evidence sufficient to sustain this adjudication. In other words, excluding the inadmissible evidence, no rational trier of fact could have found that the State established that J.H. illegally possessed a handgun beyond a reasonable doubt. Therefore, reversal is mandated.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's adjudication of J.H. as a delinquent for illegal possession of a handgun.

**REVERSED**

---

[9] This Court reviewed the video surveillance footage. Even assuming the video evidence was properly authenticated, without further corroborating evidence, the identity of the person in the video is not clear. Moreover, Det. Bidichandani testified that he could only identify the category of weapon in the video, but he could not state whether it was a real firearm or a replica; and, he could not testify definitively that the weapon seized pursuant to the search warrant was the same as that seen on the video.

17